IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| CARLOUS L. WILDER, | ) | C/A 3:07-976-CMC-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -versus- | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| THE COLUMBIA FIRE DEPARTMENT, | ) | |
| A division of the City of Columbia, | ) | |
| | ) | |
| Defendant. | ) | |

This action was filed by the Plaintiff pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq.. Plaintiff is an employee of the Columbia Fire Department.

The Defendant filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on November 13, 2007. After having received an extension of time to reply, the Plaintiff filed a memorandum in opposition to the Defendant's motion on January 2, 2008, following which Defendant filed a reply memorandum on January 4, 2008. Defendant's motion is now before the Court for disposition.[1]

---

[1] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendant has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

1



**Background and Evidence**[2]

Plaintiff, an African-American, began his employment with the Columbia Fire Department in 1984 as a firefighter. Plaintiff was promoted to a fire hydrant maintenance position in 1988, to fire prevention inspector in the Fire Prevention Division in 1992, and to the position of Deputy Fire Marshal in 1998. Gilliam Affidavit, ¶ 2 (Defendant's Exhibit A).

Plaintiff filed previous charges of race discrimination on February 7, 2002 (Defendant's Exhibit G) and on February 3, 2003 (Defendant's Exhibit H). Plaintiff and other African-American fire fighters subsequently filed a lawsuit against the City of Columbia on October 2, 2003 alleging race discrimination in promotion and pay, and on May 24, 2004 Plaintiff and another Deputy Fire Marshal, Kent Scott, filed a lawsuit against the City of Columbia alleging race discrimination in the promotion of assistant fire marshals. Those lawsuits were later settled in September 2004 as part of a "global settlement" of plaintiffs' claims. Plaintiff's Deposition, Exhibit 10 (Plaintiff's Exhibit A).

In February 2004, John Reich retired from the position of Fire Marshal. Plaintiff and five other individuals, all either assistant or deputy fire marshals, applied for this position. However, Fire Chief Bradley Anderson (white) decided to instead undertake a reorganization of the Fire Department, a part of which was the reassignment of Assistant Fire Chief Joe Floyd to the position of Fire Marshal. City Manager Charles Austin (African-American) attests that this was a lateral reassignment with no increase in pay. Austin Affidavit, ¶ 9, (Defendant's Exhibit B); see also Anderson Deposition, at pp. 7-8 (Defendant's Exhibit S). Floyd, who is white, had himself

---

[2]The facts and evidence are considered and discussed hereinabove in the light most favorable to the Plaintiff, the party opposing summary judgment. Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).



previously filed lawsuits against the Department claiming "reverse" discrimination. Anderson Deposition, pp. 12-13 (Plaintiff's Exhibit B-1).

Around this same general period of time, public education fire officer Robert Amick filed retirement papers, apparently hoping to then be rehired into the same position under a rehirement of retired employees program (known as the "TERI" program)[3] that had been created by the South Carolina Legislature. Amick subsequently decided not to reapply for this position, however, and the Plaintiff was among those who applied for the vacancy. Plaintiff's Deposition, pp. 27-28, 31 (Plaintiff's Exhibit A); Austin Affidavit, ¶¶ 3-4 (Defendant's Exhibit B); Gilliam Affidavit, ¶ 7 (Defendant's Exhibit A). All of the applicants were interviewed by Assistant Chief Joe Floyd and Assistant Fire Marshals Carmen Floyd (no relation) and Frank Maples. Carmen Floyd Affidavit, ¶ 5 (Defendant's Exhibit C). Joe Floyd and Maples are white, while Carmen Floyd's ethnicity is in dispute.[4] This panel recommended Deputy Fire Marshal Michael Thomas (African-American) for the position, a recommendation which was accepted by the Assistant Fire Chiefs (the position of fire chief then being vacant), and the appointment was then approved by City Manager Austin. Austin Affidavit, ¶ 5 (Defendant's Exhibit B); Maples Deposition, pp. 22-24, 26 (Defendant's Exhibit R).

Plaintiff challenged this promotion through the City's grievance procedure, arguing that Thomas had been "pre-selected" for the position. Plaintiff's grievance was rejected by the members of the grievance committee as well as by Assistant City Manager Allison Baker (African-American)[5], whom Austin had asked to review the promotion and grievance process, and Austin

---

[3] The TERI Program is codified at S.C.Code Ann. § 9-1-2210 (Supp. 2004).

[4] See Anderson Affidavit, ¶ 3 (Defendant's Exhibit A to Reply Brief).

[5] Plaintiff's Deposition, p. 49 (Defendant's Exhibit Q).

3



accepted this recommendation and upheld the promotion. Austin Affidavit, ¶ 6 (Defendant's Exhibit B); Baker Affidavit, ¶¶ 3-4 (Defendant's Exhibit D). No member of the grievance committee had previously played in any role in the interview or selection process that resulted in Thomas' promotion. Plaintiff's Deposition, pp. 45-46, 48-49 (Defendant's Exhibit Q).

Plaintiff then filed a charge of discrimination with the South Carolina Human Affairs Commission (SCHAC)[6] on March 2, 2005, alleging that he was the victim of race discrimination as well as unlawful retaliation. Defendant's Exhibit J. Plaintiff received a right to sue letter on February 20, 2007; Defendant's Exhibit K; and thereafter filed this lawsuit in United States District Court.

## **Discussion**

As noted, the Defendant has moved for summary judgment on all claims. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P.

---

[6]It is undisputed that South Carolina is a deferral state, and that the Plaintiff could therefore file his administrative claim with SCHAC. Nelson v. Lockheed Missiles and Space Co., No. 97-1430, 1997 WL 727609 at **1 n. 1 (4th Cir. November 24, 1997); E.E.O.C. v. Hansa Products, Inc., 844 F.2d 191, 192 n. 1 (4th Cir. 1988) (quoting 42 U.S.C. § 2000e-5(e)) ["A deferral state is one 'which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice.'"]; see S.C.Code Ann. § 1-13-90, et. seq., as amended.

4



**I.**

**(Race Discrimination Claim)**

Plaintiff alleges in his first cause of action that he was subjected to race discrimination when he was denied promotion to the position of Public Education Fire Officer as well as to the position of Fire Marshal. This claim requires proof of intentional discrimination, either by direct evidence or by the structured procedures set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See also Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981). Plaintiff does not contend that he has any direct evidence of race discrimination.[7] Therefore, Plaintiff must proceed under the McDonnell Douglas framework.[8]

The United States Supreme Court articulated a three-part analysis for analyzing discrimination claims in McDonnell Douglas. First, the Plaintiff must establish a prima facie case of discrimination. Once a prima facie case has been established, a rebuttable presumption is created

---

[7]Direct evidence is "[e]vidence, which if believed, proves existence of fact in issue without inference or presumption." Black's Law Dictionary, 460 (6th Ed. 1990) (citing State v. McClure, 504 S.W. 2d 664, 668 (Mo. Ct. App. 1974)). In other words, direct evidence is evidence that, by itself, proves the discrimination. See Williams v. General Motors Corp., 656 F.2d 120, 130 (5th Cir. 1981), cert. denied 455 U.S. 943 (1982). This is in contrast to circumstantial evidence, which is evidence from which discrimination may be inferred.

[8]Pursuant to recent court rulings, consideration of this claim under the so-called "mixed-motive" analysis is also now allowed, even though Plaintiff has presented only circumstantial, or in-direct, evidence of discrimination. Previously, consideration of a claim under the mixed-motive analysis was only proper in direct evidence cases. See Hill v. Lockheed Martin, 354 F.3d 277, 284-285 (4th Cir. 2004); Mereish v. Walker, 359 F.3d 330, 339-340 (4th Cir. 2004); *cf.* Taylor v. Virginia Union Univ., 193 F.3d 219, 232 (4th Cir. 1999) [en banc]. However, neither party has argued for consideration of Plaintiff's claim under a "mixed-motive" analysis. Therefore, the undersigned has only evaluated Plaintiff's claim using the McDonnell Douglas analysis. See Hopes v. Roche, No. 04-2963, 2005 WL 1812820 at * 6 n. 2 (D.Md. Aug. 2, 2005) (citing Nagy v. Baltimore Life Ins. Co., 49 F.Supp.2d 822, 836 n. 13 (D.Md. 1999) [declining to engage in "mixed-motive" analysis where parties have not argued a mixed-motive theory.]).

5



that the employer unlawfully discriminated against the Plaintiff. Second, once this presumption has been established, the burden of production shifts to the employer to show a legitimate, non-discriminatory reason for its actions. Third, if the employer shows a legitimate, non-discriminatory reason for its actions, the burden is then on the Plaintiff to come forward with evidence that the employer's asserted reasons for its actions are a mere pretext for its true discriminatory motives, and that the actions of the employer were really based on the Plaintiff's race. McDonnell Douglas, 411 U.S. at 802-805; Texas Dep't of Community Affairs, 450 U.S. at 252-256; Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 234-235 (4th Cir. 1991).[9]

In order to first establish a prima facie case of discrimination with regard to a promotion, Plaintiff must show the following: 1) that he is a member of a protected class; 2) that he applied for the position in question; 3) that he was qualified for the position; and 4) that he was rejected for the position in favor of someone from outside of his protected class, or there is some other evidence giving rise to an inference of unlawful discrimination. Amirmokri v. Baltimore Gas & Elec. Co., 60 F.3d 1126, 1129 (4th Cir. 1995), citing Carter v. Ball, 33 F.3d 450, 458 (4th Cir. 1994); see also Alvarado v. Bd. of Trustees of Montgomery Community College, 928 F.2d 118, 121 (4th Cir. 1991); Williams v. Grimes Aerospace Co., 988 F.Supp. 925, 937 (D.S.C. 1997).[10] It is undisputed that Plaintiff is a member of a protected class (African-American), and that he applied for both of the positions as issue. Defendant also does not contest for purposes of summary judgment

---

[9] Despite these shifting burdens of production, the Plaintiff retains the ultimate burden of persuasion on the issue of discrimination throughout. Texas Dep't of Community Affairs, 450 U.S. at 252-253; see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993).

[10] The exact standard to be used in establishing a prima facie case is flexible depending on the factual situation and the claim alleged. Ennis v. National Ass'n of Business and Educational Radio, Inc., 53 F.3d 55, 58(4th Cir. 1995).

6



that Plaintiff was otherwise qualified for both of these positions. Defendant does argue, however, that Plaintiff has failed to meet the fourth criteria for establishment of his prima facie case, and that in any event he has also failed to establish pretext with respect to either of these two positions. The undersigned is constrained to agree.

**Fire Marshal**. With respect to the Fire Marshal position at issue, Defendant argues that this position was not filled by a promotion at all, but was instead filled by Assistant Fire Chief Joe Floyd as part of a reorganization of upper management duties within the Fire Department. Defendant has presented evidence to show that this was a lateral assignment, with no increase in pay. Austin Affidavit, ¶ 9 (Defendant's Exhibit B). Plaintiff does not dispute Defendant's evidence or that this reorganization took place, but argues that it was only handled in this manner so as to deny him the position. This argument is not sufficient to avoid summary judgment on this claim.

First, while Plaintiff argues about the relative qualifications of Joe Floyd for the position versus his own qualifications and also that Floyd may have been given the position because he had other discrimination lawsuits pending, even assuming these assertions to be true for purposes of summary judgment, neither establishes that the reason Plaintiff did not receive this promotion was because of his race. Plaintiff does not dispute Defendant's representation that, in addition to the Plaintiff, five other individuals had also applied for this position, two white and three African-American, and the evidence before this Court clearly establishes that because Chief Anderson reassigned Joe Floyd to the position as a lateral transfer with no increase in pay, *none* of these applicants were considered for promotion into the position, and that none of these applicants were therefore rejected for the position. See Austin Affidavit, ¶ 9 (Defendant's Exhibit B); Anderson Affidavit, ¶¶ 5, 8-9 (Defendant's Exhibit A to Reply Brief); *Cf.* Hackney v. Perry, No. 97-2055, 1998

7



WL 801490, * 2 (4th Cir. November 18, 1998) [where lateral transfer resulted in cancellation of announcement of vacant position, competitive selection was not undertaken to fill the position and plaintiff's application was therefore neither considered nor rejected within the meaning of McDonnell Douglas]; Woodward v. United Parcel Service, Inc., 306 F.Supp.2d 567, 574 n. 3 (D.S.C. 2004) [Lateral transfer could not support a failure to promote claim]; see also, [generally discussing lateral transfers] Griffin v. Sea Mar Management, Inc., 243 Fed.Appx. 852, 854 (5th Cir. 2007) [An employer's refusal to grant a purely lateral transfer does not constitute an adverse employment decision actionable as intentional racial discrimination] (quoting Pegram v. Honeywell, Inc., 361 F.3d 272, 282 (5th Cir. 2004) ["Where the evidence produces no objective showing of a loss in compensation, duties, or benefits, but rather solely establishes that a plaintiff was [not] transferred [to] a prestigious and desirable position...that evidence is insufficient to establish an adverse employment action."]. Indeed, there is no evidence to show that, had the Department not undergone this reorganization, Plaintiff would have even been selected for the position over the other five applicants.

Plaintiff has also offered no evidence whatsoever to support his general and conclusory claim that the reorganization was only undertaken in order to deny him promotion to the Fire Marshal position because he is black. Kulak v. City of New York, 88 F.3d 63, 71 (2nd Cir. 1996) ["conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment"]; Nicolo v. Philip Morris, Inc., 201 F.3d 29, 33 (1st Cir. 2000) [Conjectural allegations and conclusory assertions do not suffice to establish a genuine issue of fact]; *cf.* Gumbs v. Hall, 51 F.Supp.2d 275, 280 (W.D.N.Y. 1999) ["the fact that [the person selected for a position] is...white...[which is outside the protected class] is insufficient, by itself, to give rise to

8



an inference of discrimination"], aff'd, 205 F.3d 1323 (2nd Cir. 2000); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) ["Rule 56(c) mandates the entry of summary judgment... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."]. Under these facts, whether Plaintiff was more qualified for the position then Joe Floyd (assuming this claim to in fact be true) becomes irrelevant. Hackney, 1998 WL 801490 at *3 [finding that whether individual who received a position through lateral transfer was qualified for the position was irrelevant to plaintiff's burden of establishing a prima facie case of discrimination where undisputed evidence showed that the job announcement was cancelled and the position filled by a lateral transfer without competitive selection]; Woodward, 306 F.Supp.2d at 574 n. 3; LeBlanc v. Great American Ins. Co., 6 F.3d 836, 843 (1st Cir. 1993) [In order to establish pretext, the evidence as a whole must be sufficient for a reasonable fact-finder to infer that the employer's decision was motivated by racial animus].

Therefore, the evidence before this Court does not create a genuine issue of fact as to whether Plaintiff was the victim of race discrimination in his non-selection for this position, and having failed to establish an essential element of his prima facie case or to establish pretext, this claim should be dismissed.

**Public Education Officer.** With respect to the position of Public Education Officer, this position was of course filled by an African-American (Thomas). Further, although Thomas was first recommended for the position by a three-man panel, which recommendation was accepted by the assistant fire chiefs, the appointment was ultimately approved by City Manager Austin, who is also an African-American. United States v. Crosby, 59 F.3d 1133, 1135 n. 4 (11th Cir. 1995) [Reasoning that where a decision-maker is of the same race as plaintiff, the plaintiff should present

9



evidence to show that the decision-maker held members of his own race to a higher standard of conduct than members of another race]; Rhodes v. Guiberson Oil Tools, 75 F.3d 989, 1002 (5th Cir. 1996) [finding that a decision-maker who was the same race as the plaintiff considerably undermined the probability that race was a factor].[11] Hence, whatever else one may say about the process used to fill this position, the undersigned is unable to derive any inference from this evidence that the reason Plaintiff was not promoted into this position was because he is an African-American, or was otherwise because of some type of racial animus. Indeed, in his memorandum opposing summary judgment, Plaintiff does not even argue this promotion decision as a race discrimination claim. Rather, he argues that his failure to receive this promotion was a result of unlawful retaliation. See Plaintiff's Brief, at pp. 10-12.

Therefore, Plaintiff has failed to present evidence sufficient to raise a genuine issue of fact as to whether he was denied this promotion because of his race to survive summary judgment, and Plaintiff's race discrimination claim with respect to this position should be dismissed. Hawkins v. Pepsico, Inc., 203 F.3d 274, 281 (4th Cir. 2000) [affirming the grant of summary judgment to the employer where the employee did not "show that...[the] problems were racial in nature"]; Cook v. CSK Transp. Corp., 988 F.2d 507, 513 (4th Cir. 1993) ["[U]nsupported allegations do not establish a case of race discrimination...."].

## II.

### (Retaliation Claim)

Plaintiff alleges in his second cause of action that he was denied these two promotions

---

[11]The Assistant City Manager who reviewed this promotion after Plaintiff filed a grievance (Allison Baker), and who rejected Plaintiff's claim of impropriety in the filling of this position, is also an African-American.

10



out of retaliation for his participation in the earlier charges of discrimination filed by himself and others.[12] In order to establish this claim, Plaintiff must first present evidence sufficient to establish a prima facie case, as follows: 1) that he engaged in protected activity; 2) that the Defendant took an adverse employment action against him, and 3) that a causal connection exists between his protected activity and the alleged adverse action(s).  Lettieri v. Equant, Inc., 478 F.3d 640, 650 (4th Cir. 2007); Whatley v. South Carolina Dep't of Pub. Safety, No. 05-0042, 2007 WL 120848, at *7-8 (D.S.C. January 10, 2007).  If Plaintiff establishes a prima facie case, the Defendant employer then has the burden of producing a legitimate, non-discriminatory reason for its actions, and if the employer does so, Plaintiff must then demonstrate that the Defendant's proffered reason for its actions is pretextural. Id.

**Fire Marshal**.  After careful review and consideration of the materials and arguments presented in this case, the undersigned can find no evidence of unlawful retaliation on the part of the Defendant with respect to the Fire Marshal position.  As noted hereinabove, in order to establish his prima facie case with respect to this position, Plaintiff needs to show that the Defendant took an adverse employment action against him.  However, because there was no promotion with respect to this position for Plaintiff to receive (since the duties of retiring Fire Marshal Reich were taken over

---

[12]Plaintiff also references in his second cause of action, which is titled "Retaliation", that he was subjected to a hostile work environment because of his participation in the earlier charges of discrimination.  While a "hostile work environment" is recognized as a separate and distinct discrimination claim that can be brought under Title VII; see Ocheltree v. Scollon Productions, Inc., 308 F.3d 351, 356 (4th Cir. 2002), rehearing en banc, 335 F.3d 325 (4th Cir. 2003), cert. denied, 124 S.Ct. 1406 (2004); Spicer v. Com.of Va. Dep't of Corrections, 66 F.3d 705, 710 (4th Cir. 1995); Brown v. Perry, 184 F.3d 388, 393 (4th Cir. 1999); Plaintiff does not argue his claims under a hostile work environment theory either in his Complaint or in his brief opposing summary judgment. Likewise, the Defendant has not addressed Plaintiff's claims under a hostile work environment theory in its brief in support of summary judgment, or in its reply brief.  Therefore, the undersigned has not considered Plaintiff's claims under a hostile work environment theory of liability.

11



by Assistant Fire Chief Floyd due to a reorganization of the Department), it is arguable that no "adverse employment action" as defined by the applicable caselaw occurred. Hackney, 1998 WL 801490, at *2 [where lateral transfer resulted in cancellation of announcement of vacant position, competitive selection was not undertaken to fill the position and plaintiff's application was therefore neither considered nor rejected within the meaning of McDonnell Douglas]; *cf.* Woodward, 306 F.Supp.2d at 574 n. 3 [Lateral transfer could not support a failure to promote claim]. In any event, as previously noted, Plaintiff has provided no evidence whatsoever to show that, had the Department not undergone this reorganization, he would have been the candidate most qualified for selection to this position, or that the reorganization was implemented merely to keep Plaintiff from receiving this position. Cook, 988 F.2d at 513 ["[U]nsupported allegations do not establish a case of ...discrimination"].[13]

Therefore, Plaintiff's claim of retaliation, at least insofar as it relates to the Fire Marshal position, should be dismissed.

**Public Education Officer**.  With respect to the position of Public Education Officer, Plaintiff has presented sufficient evidence to establish his prima facie case. First, he clearly engaged in protected activity when he filed his previous complaints of discrimination and participated in lawsuits against the City of Columbia alleging race discrimination. Laughlin v. Metropolitan Washington Airport's Authority, 952 F.Supp. 1129, 1133 (E.D.Va. 1997), aff'd 149 F.3d 253 (4th Cir. 1998). Plaintiff was also subject to an adverse employment action when he was passed over for

---

[13]In fact, Plaintiff argues that Floyd received this position "in an act of appeasement" because Floyd had filed his own discrimination charges against the City, and this was a way to "[defuse] his charges. Plaintiff's Brief, pp. 2-3. Such reasoning, if true, defeats any claim that *Plaintiff* did not receive the position because of retaliation.

12



promotion to this position. Plumb v. Potter, 212 Fed.Appx. 472, 482 (6th Cir. 2007) [Denial of promotion is an adverse employment action].

Defendant argues that Plaintiff has failed to establish a causal connection between these two events because Thomas was qualified for the position when selected and in any event too long of a period of time had passed between the protected activity and the adverse employment action at issue to establish a causal connection between these events, citing to Pascual v. Lowe's Home Centers, Inc., 193 Fed.Appx. 229, 233 (4th Cir. 2006) [finding that the passage of three to four months between the protected activity and the adverse action is "too long to establish a causal connection by temporal proximity alone"]. Defendant argues that Plaintiff's protected activity went back as far as 1998, and that more than two years had passed since his most recent previous charge of discrimination. However, the record before this Court establishes that Plaintiff was involved in discrimination claims and even lawsuits against the Defendant during the very time that he applied for, and was rejected for, the Public Education Officer position. Plaintiff's Exhibit B-2; Defendant's Exhibit P. Hence, there is no basis for a finding that too much time had passed between Plaintiff having engaged in protected activity and the adverse employment action at issue to give rise to an inference of causation. *Cf.* Hunt-Golliday v. Metropolitan Water Reclamation District of Greater Chicago, 104 F.3d 1004, 1013 (7th Cir. 1997)[noting that "suspicious timing does constitute circumstantial . . . evidence to support a claim of discrimination"]; Gordon v. Southern Bells, Inc., 67 F.Supp.2d 966, 988 (S.D.Ind. 1999)["A close temporal connection between the two events is generally enough to satisfy the third element of the prima facie case."]; Pantoja v. American NTN Bearing Mfg. Corp., 495 F.3d 840, 850 (7th Cir. 2007) [Timing was "suspicious enough to suffice to support [ ] prima facie case."]; Texas Dep't of Community Affairs, 450 U.S. at 253 [the burden of

13



establishing a prima facie case is not onerous]. Therefore, Plaintiff having presented sufficient evidence to establish his prima facie case, the Court must turn to consideration of the remainder of the McDonnell Douglas proof scheme.

The Defendant has presented evidence to show that applicants for the Public Education Officer position were interviewed by a three person panel, that Thomas was qualified for the position and received the endorsement of the panel as well as of the assistant fire chiefs, and that the promotion was then approved by City Manager Austin. Austin Affidavit (Defendant's Exhibit B); Carmen Floyd Affidavit (Defendant's Exhibit C); Baker Affidavit (Defendant's Exhibit D); Fire Department Memorandum concerning the filling of this position (Defendant's Exhibit O). This evidence is sufficient to establish a legitimate, non-discriminatory reason for Thomas' hiring. See EEOC v. Clay Printing Co., 955 F.2d 936, 941 (4th Cir. 1991) [The Defendant's burden is only one of production, not of persuasion]. Therefore, in order to avoid summary judgment, Plaintiff must present evidence of pretext in the making of this decision.

In order to show pretext, Plaintiff must show that "but for" the Defendant's intent to retaliate against him because of his previous discrimination claims and lawsuits against the City, he would have received the promotion at issue. EEOC, 955 F.2d at 941; Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 234 (4th Cir. 1991). However, discerning an employer's motives in a case like this is always difficult, as it is the rare employer who is so unwise as to make incriminating statements concerning its motivation so as to provide a plaintiff with concrete evidence to support their claim. Therefore, the law provides that evidence derived from circumstances and inferences may be used to support a finding of pretext. LeBlanc, 6 F.3d at 843 (1st Cir. 1993) ["Direct or indirect evidence of discriminatory motive may do, but 'the evidence as a whole... must be sufficient

14



for a reasonable fact-finder to infer that the employer's decision was motivated by [retaliatory animus].'"](citing Goldman v. First Nat'l Bank, 985 F.2d 1113, 1117 (1st Cir. 1993)(quoting Connell v. Bank of Boston, 924 F.2d 1169, 1172, n. 3 (1st Cir. 1991), cert. denied, 111 S.Ct. 2828 (1991)); Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 141-143 (2000).

Here, the evidence confirms that Plaintiff was a highly visible participant in the publicity surrounding the previous discrimination charges and lawsuits, and Plaintiff testified that, while he had received several promotions prior to that time, he never received a promotion thereafter. Plaintiff's Deposition, pp. 42-43 (Plaintiff's Exhibit A); Anderson Deposition, pp. 25-29 (Plaintiff's Exhibit B-1) and Exhibit 2 (Plaintiff's Exhibit B-2); see Gilliam Affidavit, ¶ 2 (Defendant's Exhibit A). Plaintiff also notes that before Amick decided not to seek reappointment to the Public Education Officer position at issue, he and the Plaintiff were the only two applicants.[14] Hence, when Amick subsequently withdrew his application, Plaintiff was the only applicant remaining, and Defendant does not argue that Plaintiff was not qualified for the position. However, rather than award the position to the Plaintiff (for which he had already interviewed),[15] the Defendant instead reopened the application period to allow other people to apply. Two more applications were then received (including that of Thomas); Defendant's Exhibit O; Anderson Deposition, pp. 49-53 (Plaintiff's Exhibit B); with Thomas testifying that he was actually approached by Assistant Fire Chief Joe Floyd (a member of the selection panel) and asked if he would apply for the position. Thomas Deposition,

---

[14]This was after the position was reopened for external applicants on the advice of the Human Resources Department. Defendant's Exhibit O, ¶ 4.

[15]Defendant's Exhibit O.



15

pp. 36, 56 (Plaintiff's Exhibit D); see also Thomas Deposition, Plaintiff's Exhibit No. 1 (Plaintiff's Exhibit D).

Thomas was then given the promotion, even though the record reflects that he had only been employed by the Fire Department for about seven years with only one year of experience as a deputy fire marshal in the Fire Prevention Bureau, while Plaintiff had been employed by the Department for over twenty years, twelve of which were as a deputy fire marshal in the Fire Prevention Bureau. Plaintiff had also been a "fire educator" throughout his tenure as a deputy fire marshal, in addition to his experience in conducting fire inspections, asbestos inspections, and arson investigations. While Plaintiff did not have an instructor certification, which was one of the qualifications deemed "desirable" by the Defendant; see Defendant's Exhibit N; Thomas did not possess a fire education certification (also deemed to be a "desirable" qualification), but was allowed to obtain this certification subsequent to being promoted. See Human Affairs Commission Determination, p. 1 (Plaintiff's Exhibit B-2).

The Defendant argues that Plaintiff had several deficiencies in experience which made Thomas a better candidate for the position; see Plaintiff's Deposition, pp. 45-58 (Defendant's Exhibit Q); however, considered in the light most favorable to the Plaintiff, the undersigned concludes that Plaintiff has produced sufficient evidence to create an issue of fact as to whether the Defendant's proffered legitimate reason for Plaintiff having failed to receive this position was false to defeat summary judgment on this claim.[16] LeBlanc, 6 F.3d at 843 ["direct or indirect evidence of

---

[16]To the extent Defendant appears to be arguing that the City Grievance Committee's rejection of Plaintiff's grievance defeats his claim, this argument is without merit. *Cf.* Bell v. Town of Port Royal, SC, No. 06-1095, 2008 WL 1849865 at *8 (D.S.C. April 21, 2008) [Decision-maker's reasons, not grievance committee's findings, are what are at issue].

16



discriminatory motive may do, but 'the evidence as a whole...must be sufficient for a reasonable fact-finder to infer that the employer's decision was motivated by [retaliatory animus]'"]; Reeves, 530 U.S. at 141-143 [setting forth the general proposition that where a plaintiff presents a prima facie case together with sufficient evidence to conclude that the employer's asserted justification for the employment decision is false, a trier of fact can conclude that the employer unlawfully discriminated]; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) [at summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor"].  Therefore, Defendant's motion for summary judgment with respect to Plaintiff's public education officer retaliation claim should be denied.

## Conclusion

Based on the foregoing, it is recommended that the Defendant's motion for summary judgment be **denied** with respect to Plaintiff's retaliation claim regarding the Public Education Officer position (second cause of action).  It is further recommended that the Defendant's motion for summary judgment be **granted** with respect to Plaintiff's race discrimination claim (first cause of action), and that summary judgment also be **granted** with respect to Plaintiff's retaliation claim regarding the Fire Marshal position (second cause of action).

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

June 30, 2008

